IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**OTHO E. PETTIT, JR., et al.**                                                                     **PLAINTIFFS**

**V.**                                                                                            **NO. 3:22-CV-94-DMB-RP**

**THE MONTFORT JONES
AND ALLIE BROWN JONES
FOUNDATION, et al.**                                                                  **DEFENDANTS**

**OPINION AND ORDER**

Prospective applicants for scholarships provided by The Montfort Jones and Allie Brown Jones Foundation sued the Foundation as well as the Foundation's chairman, treasurer, director, and trustee, alleging mismanagement of the Foundation's scholarship fund. The defendants have moved to dismiss for lack of personal jurisdiction and, alternatively, for lack of subject matter jurisdiction, and also seek to transfer venue. Because the plaintiffs fail to establish standing to assert their claims, this case will be dismissed for lack of subject matter jurisdiction and the separate motions to change venue will be denied as moot.

**I
Procedural History**

On May 27, 2022, Otho E. Petit, Jr., and Hart O. Petit filed a complaint in the United States District Court for the Northern District of Mississippi against The Montfort Jones and Allie Brown Jones Foundation, Roger Collins, Mary Collins, Stephanie Collins, Stan Earnhardt, and "John Does 1-10," alleging mismanagement of the Foundation's scholarship fund and "seek[ing] a declaratory judgment … that one-quarter of the [Foundation's] total assets, roughly 1 million dollars, … should be used to provide scholarships for men and women of Attala county, Mississippi, studying at the University of Mississippi." Doc. #1. In response to a show cause

order regarding deficiencies in their diversity jurisdiction allegations, they filed an amended complaint on June 14, 2022. Docs. #2, #4. On July 13, 2022, the Foundation, Earnhardt, and Stephanie[1] filed a motion to dismiss the amended complaint, Doc. #7, and a motion to transfer venue to the Northern District of Oklahoma, Doc. #9.

After receiving leave to amend,[2] Otho, Hart, and four additional plaintiffs—Henry Harrison Jordan, James Parker Jordan, Samuel Robert Hudson, and Wesley David Hudson—filed a second amended complaint against the same defendants on August 29, 2022. Doc. #33. On September 12, 2022, all defendants filed a motion to dismiss the second amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2), Doc. #36; and a renewed motion to transfer venue, Doc. #37. The next day, the Court denied as moot the motion to dismiss the amended complaint. Doc. #39. The motion to dismiss the second amended complaint is briefed. Doc. #38, #41. The motions to transfer venue are briefed too. Docs. #10, #17, #27, #37,[3] #42.[4]

## II
## Motion to Dismiss

The plaintiffs seek dismissal for lack of personal jurisdiction or, alternatively, lack of standing. Doc. #36 at 1. However, because courts normally assure themselves of subject matter jurisdiction before addressing any other issues[5] and because "[s]tanding is a component of subject

---

[1] Parties with the same surname will be referenced by their first names to avoid confusion.

[2] Doc. #32.

[3] The renewed motion to transfer venue "incorporate[s] by reference the arguments set forth in the Memorandum Brief in Support of Defendants' Motion to Transfer Venue (Dkt. No. 10) and Defendants' Reply in Support of Motion to Transfer Venue (Dkt. No. 27)." Doc. #37.

[4] Rather than file a memorandum brief in support of their response to the renewed motion to transfer venue, the plaintiffs, "[i]n keeping with Defendants' pattern, … pray the Court incorporate by reference their prior response to Defendants' earlier motion [Doc. 16] and the associated memorandum brief [Doc. 17]." Doc. #42.

[5] *Bulkley & Assocs., L.LC. v. Dep't of Indus. Rels., Div. of Occupational Safety & Health of the State of Cal.*, 1 F.4th 346, 350 (5th Cir. 2021).

2

matter jurisdiction,"[6] the Court will address the alternative argument first.

### A. Subject Matter Jurisdiction

#### 1. Standard

Motions brought under Federal Rule of Civil Procedure 12(b)(1) challenge a court's subject matter jurisdiction. A motion to dismiss under Rule 12(b)(1) is characterized as either "facial" or "factual." *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015). "Where, as here, the movant mounts a facial attack on jurisdiction based only on the allegations in the complaint, the court simply considers the sufficiency of the allegations in the complaint because they are presumed to be true." *Lee v. Verizon Commc'ns., Inc.*, 837 F.3d 523, 533 (5th Cir. 2016) (internal quotation marks omitted). A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not necessarily prevent the plaintiff from pursing the claim in the same forum or in another. *See Lopez v. Pompeo*, 923 F.3d 444, 447 & n.2 (5th Cir. 2019).

#### 2. Factual allegations

The Montfort Jones and Allie Brown Jones Foundation[7] is a 501(c)(3) private foundation with a listed address of Bristow, Oklahoma. Doc. #33 at 2. Roger Collins is the Foundation's chairman, Mary Collins is a trustee, Stephanie Collins is a director, Stan Earnhardt[8] is the treasurer, and John Does 1-10 are "present or former Foundation trustees/directors." *Id.* at 3.

---

[6] *Consumer Data Indus. Ass'n v. Texas through Paxton*, 564 F. Supp. 3d 506, 512 (W.D. Tex. 2021) (citing *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006)).

[7] "The Foundation was formed on or about August 31, 1961, pursuant to the last will and testament of the late Mrs. Allie Brown Jones …." Doc. #33 at 4. "Montfort B. Jones and Mrs. Allie Brown Jones were native citizens of Mississippi. Mrs. Jones … grew up in Sallis, Attala county, Mississippi. Mr. Jones was born … in Tchula, Holmes county, Mississippi …. Mr. and Mrs. Brown married on January 19, 1910. … [B]oth [are deceased and] buried in Attala county, Mississippi." *Id.* "With the possible exception of Oprah Winfrey, [they] remain the most generous philanthropists to have ever bestowed their wealth upon the people of Attala county, and by extension, all of Mississippi." *Id.*

[8] Stan's last name is spelled as "Earnhard" in at least one instance in the second amended complaint. *See id.* at 2.

3

The Foundation was established to "provide scholarships for men and women studying at the University of Mississippi, Oxford Mississippi," among other purposes. *Id.* at 5. "Originally the Foundation, among other things, provided scholarships to students of Attala county, Mississippi, to attend the University of Mississippi (Ole Miss)." *Id.* at 5. "However, at some point in time, … the Foundation changed its goals and purpose, more recently stating in its tax filings that charitable disbursements 'MUST BENEFIT CITIZENS OF BRISTOW, OKLHOMA [sic].'" *Id.* "Prior to this new restriction …, students from Attala county, Mississippi in fact received scholarships from the Foundation to attend Ole Miss." *Id.* at 6.

Hart O. Petit is a citizen of Attala County, Mississippi,[9] and "would almost certainly have applied for and received one of the Foundation scholarships." *Id.* at 7. "This is true for his brother and for his wife since all three of them attended Ole Miss on scholarships and applied for every scholarship they could." *Id.* "Hart assisted with his wife's … student loans … who would have likely applied for and received a scholarship had she not been properly excluded." *Id.* Hart's two children "will soon be Ole Miss students who would otherwise be Foundation scholarship applicants … if they were not excluded from the scholarship program." *Id.* at 8.

Otho E. Petit, Jr.,[10] "consequent to Defendant's redirection of scholarships away from Attala county students, contributed more to the education of Hart … than he otherwise would have had Hart received a Foundation scholarship."[11] *Id.* Otho and his wife "are the only donors of the Gail and Bubba Pettit scholarship endowment at the University of Mississippi" and "are the

---

[9] *Id.* at 1.

[10] Though not clearly indicated in the second amended complaint, based on the plaintiffs' arguments regarding a parent's duty to provide for his children's education, *see* Doc. #41 at 5, the Court presumes Otho is Hart's father.

[11] "An untold number of students in Attala county, Mississippi, have not been provided with scholarships by the Foundation for which there were otherwise qualified and which should have been awarded consistent with Mr. and Mrs. Jones' intent." *Id.* at 10.

4

primary donors of the Attala County Ole Miss Alumni Association endowment at the University of Mississippi," both of which "scholarships have gone primarily to students who are from Attala county, Mississippi." *Id.* Otho "has not been able to award the Pettit and Attala County Alumni scholarships properly since the Foundation scholarships should have been included in assessing each student's needs and awards." *Id.* at 9.

"Henry Harrison Jordan, James Parker Jordan, Samuel Roberts Hudson, and Wesley David Hudson are either existing or incoming students at the University of Mississippi [who] need and would benefit from tuition assistance [and] are excellent candidates for a Foundation scholarship except for the fact that [they] are expressly excluded from the class of eligible applicants." *Id.* at 10–11. The father of Samuel and Wesley "was told on two separate occasions by the Ole Miss Foundation office, specifically Kim Barnes, that [they] were ineligible to even apply for a Foundation scholarship because they are not residents of Bristow, Oklahoma." *Id.* at 11.

### 3. Analysis

In seeking dismissal of the second amended complaint, the defendants argue that the plaintiffs have "no standing to sue for [the defendants'] failure to provide a [scholarship]" because the plaintiffs failed to (1) "actively seek out that benefit" and (2) allege "any facts that would actually show they had sufficient pre-existing knowledge" that "it would have been futile for them to apply for scholarships." Doc. #38 at 2.

The plaintiffs respond that their standing is established because it must be "taken as true … that Hart would have applied for such a scholarship had he not been excluded by the Defendants' … precondition;" "Hart's education cost him more than it would have if he had received a Foundation scholarship [which] is a particularized, actual, traceable injury;" "Otho was injured due to Hart's exclusion from the scholarship program;" and Henry, James, Samuel, and

5

Wesley were injured because they "were specifically told they were ineligible for a Foundation scholarship because of their residence and thus have incurred greater educational expenses." Doc. #19[12] at 3, 4; Doc. #41 at 5. The defendants did not reply.

> The irreducible constitutional minimum of standing contains three elements: (1) The plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable decision.

*Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 606 (5th Cir. 2018) (cleaned up) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The party invoking federal subject matter jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. "[A] purported injury is not concrete … unless it has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 821 (5th Cir. 2022) (internal quotation marks omitted) (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021)). These injuries include "traditional tangible harms, such as physical harms and monetary harms" as well as "the kind of harms recognized in longstanding tort law or the Constitution itself." *Id.* at 822. A lawsuit "may not proceed [when a] plaintiff has not suffered any physical, monetary, or cognizable intangible harm." *Id.* at 823.

The plaintiffs compare their situation to the facts of two Fifth Circuit cases—*Davis v. Tarrant County*, 565 F.3d 214 (5th Cir. 2009), and *Association of Community Organizations for Reform Now v. Fowler*, 178 F.3d 350 (5th Cir. 1999) ("*ACORN*"). *See* Doc. #41 at 5 (citing *Davis*); Doc. #19 at 5 (citing *ACORN*). Neither case supports their arguments.

---

[12] In their response to the motion to dismiss the second amended complaint, the plaintiffs incorporate by reference their response to the motion to dismiss the amended complaint. *See* Doc. #41 at 4–5.

6

*i. Davis*

In *Davis*, the plaintiff, a criminal defense attorney, sued Tarrant County, Texas, and its criminal district judges because they "denied his application to be included on the list of attorneys eligible for court appointment in felony cases in Tarrant County." 565 F.3d at 216. Davis applied in 2005 under a published "set of guidelines for felony court appointments." *Id.* at 219. However, in April 2006, "the Tarrant County criminal district court judges issued the Tarrant County District Courts Felony Court-Appointment Plan (the 'Plan'), which superseded existing guidelines for felony court appointments." *Id.* Although Davis wrote letters requesting an explanation of his rejection both before and after the Plan was implemented, he did not reapply under the Plan. *Id.* at 217. The district court granted a motion to dismiss the case because the criminal district judges were "immune from suit in their individual capacities because they were acting in their judicial capacities," they were entitled to Eleventh Amendment immunity while acting in their official capacity, and they were acting on behalf of Texas, not Tarrant County. *Id.* The Fifth Circuit affirmed based in part on Davis' lack of standing to challenge the Plan, though the "district court did not base its ruling on Davis's lack of standing." *Id.* at 220. The Fifth Circuit found Davis had "standing to challenge only his rejection under the Tarrant County guidelines in effect at the time he applied for felony court appointments in June 2005. He lack[ed] standing to challenge the establishment and implementation of the 2006 Plan" because he had not applied under it. *Id.* at 221. The Fifth Circuit rejected Davis' speculation that "his application would have been rejected if he had reapplied under the Plan due to his rejection under the superseded guidelines," finding that "[s]uch speculation is not sufficient to show that applying under the Plan would have been futile." *Id.* at 220–21 (collecting cases).

The plaintiffs cite *Davis* in the attempt to show the law does not require them to have

7

applied for the scholarship to have standing because they knew applying to the scholarship was futile. Doc. #41 at 5. But *Davis* holds that a plaintiff generally must submit to a challenged policy before pursing an action to dispute it. 565 F.3d at 220–21. Though *Davis* acknowledges some exceptions for futility—if an ordinance exists to ban the subject of the application, if a letter is received stating the application would be denied, or if the plaintiffs were told they were not eligible to apply—in each case cited by the *Davis* court accepting futility in analyzing standing, the denial of an application was under color of law or allegedly violated the applicant's legal rights.[13] *Id*. Here, the plaintiffs fail to allege a violated legal right or to challenge a law applicable to the scholarship fund.[14]

### ii. ACORN

In *ACORN*, the eponymous nonprofit corporation, in the effort to advance the interests of persons with low and moderate incomes, devoted resources to increase voter registration by working to pass the National Voter Registration Act ("NVRA") and subsequently litigating to enforce it. 178 F.3d at 354. After the NVRA took effect in Louisiana, ACORN sued certain Louisiana officials, alleging Louisiana had refused to implement the NVRA. *Id.* The Louisiana officials settled but "[a]ccording to ACORN, Louisiana ha[d] continued to violate the NVRA despite the initial settlement" and "after failing to receive sufficient assurances that Louisiana

---

[13] *See Davis*, 565 F.3d at 220–21 ("*Ellison v. Connor*, 153 F.3d 247, 255 (5th Cir. 1998) (holding that it would have been futile for plaintiffs to apply for permits [from the United States Corps of Engineers] because they had been sent a letter specifically stating that the permits would be denied); *Moore v. U.S. Dep't of Agric.*, 993 F.2d 1222, 1222–24 (5th Cir. 1993) (holding that white farmers did not have to complete an application to participate in a Farmers Home Administration program when [it] told them that the program was closed to whites); *Desert Outdoor Adver., Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996) (holding that application for sign permits would be futile when city had sued plaintiffs to remove signs, and ordinance 'flatly prohibited' the signs).").

[14] And while the second amended complaint alleges Samuel and Wesley's *father* was told that Samuel and Wesley "were ineligible to apply for a Foundation scholarship," Doc. #33 at 11, Samuel and Wesley's father is not a party in this case; even if he was, on the present allegations, he would fail to show standing for the same reasons as the plaintiffs.

8

would correct the problems, ACORN filed … suit under the NVRA, seeking declaratory and injunctive relief." *Id.* at 354–55. The district court granted summary judgment against ACORN based on its conclusion that ACORN lacked standing. *Id.* at 355. On appeal, the Fifth Circuit reviewed ACORN's organizational standing to sue on behalf of itself and representational standing to sue on behalf of its members and reversed as to organizational standing on ACORN's claim that Louisiana failed to implement the NVRA. *Id.* at 356, 365. The Fifth Circuit recognized that under United States Supreme Court precedent, "an organization has standing to sue on its own behalf where it devotes resources to counteract a defendant's allegedly unlawful practices." *Id.* at 360. However, diversion of resources is insufficient to establish constitutional standing, even by an organization, absent any showing that the "injury was a direct result of the defendant's allegedly illegal conduct*.*" *Id*. at 361 n.7. The Fifth Circuit concluded that "ACORN ha[d] presented evidence that it ha[d] expended resources registering voters in low registration areas who would have already been registered if the appellees had complied with the requirement under the NVRA that Louisiana must make voter registration material available at public aid offices." *Id.* Thus, ACORN had standing to pursue its claim. *Id.*

According to the plaintiffs, in *ACORN* "the Fifth Circuit found [the plaintiff] did have standing because it had allegedly expended resources to counteract the state's failure to implement a federal law." Doc. #19 at 5. The plaintiffs attempt to compare ACORN's injury (diversion of resources), ACORN's relief requested on behalf of third parties, and ACORN's resultant standing "to assert the legal rights and interests of third parties," to their own alleged injuries (increased cost of college tuition) and relief requested. *Id.* at 6. The plaintiffs seem to argue that since ACORN had standing, they have standing[15] because (1) although they and the *ACORN* plaintiffs

---

[15] The plaintiffs submit that Otho's standing relies on Hart's standing. *See* Doc. #19 at 4 ("Having shown that Hart has standing, Otho likewise has standing."). This Court does not disagree. So this Court's determination that Hart

9

seek relief on behalf of others, this does not preclude standing, and (2) their alleged injury of increased payment of college tuition is more concrete and particularized than ACORN's injury of diverted resources. *Id.* However, the plaintiffs' comparison of themselves to ACORN is insufficient to establish their standing because, unlike ACORN, the plaintiffs are not organizations alleging the diversion of resources[16] and, crucially, are not challenging the defendants' conduct as illegal under a specific law and are not alleging the violation of a legal right. Therefore, *ACORN* provides an example of standing the plaintiffs here do not have.

### *iii. This case*

Because the plaintiffs do not challenge the policies of a governmental entity, like in *Davis* and *ACORN*, or allege a legally protected interest in the scholarship provided by the Foundation, the second amended complaint does not allege an injury in fact, an essential element of standing, which is required for this Court to have subject matter jurisdiction. So this case is properly dismissed for lack of subject matter jurisdiction.

### B. Personal Jurisdiction

Because the Court grants the motion to dismiss for lack of subject matter jurisdiction, the Court need not address the arguments to dismiss based on personal jurisdiction grounds.

### III
### Motions to Change Venue

Having found dismissal for lack of subject matter jurisdiction warranted as to all the

---

lacks standing means Otho lacks standing too, particularly since the plaintiffs assert Otho's injury is based on the allegation that he "contributed more to the education of Hart … than he otherwise would have had Hart received a Foundation scholarship." Doc. #33 at 8. To the extent the plaintiffs may argue Otho's standing derives from the allegation that Otho "has not been able to award [other scholarships] properly since the Foundation scholarships should have been included in assessing each student's needs and awards," *id.* at 9, there are no allegations describing how such injured him (or any third-party students), or why such would be a legally cognizable injury.

[16] "The Supreme Court has recognized that when an organization's ability to pursue its mission is 'perceptibly impaired' because it has 'diverted significant resources to counteract the defendant's conduct,' it has suffered an injury under Article III." *Tenth St. Residential Ass'n v. City of Dallas*, 968 F.3d 492, 500 (5th Cir. 2020).

plaintiffs' claims against the defendants, the defendants' motions to change venue will be denied as moot.

## IV
## Conclusion

The motion to dismiss [36] is **GRANTED**. The motions to change venue [9][37] are **DENIED as moot**. This case is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

**SO ORDERED**, this 2nd day of March, 2023.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**